**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| REAVES LAW FIRM, PLLC, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC; JONATHAN HANCOCK; MARY KATHERINE CAMPION; JERRICK MURRELL; DEAN J. SHAUGER; and JOHN DOES 1–3, | ) ) ) ) ) ) ) ) | No. 2:25-cv-2623-SHL-atc |
| Defendants. | ) | |

**ORDER ISSUING RULE 11 SANCTIONS TO PLAINTIFF FOR THE MISUSE OF
ARTIFICIAL INTELLIGENCE IN COURT FILINGS**

This case presents a study in the perils that can result from the unchecked use of artificial intelligence in the drafting of legal filings.

On June 18, 2025, Plaintiff Reaves Law Firm, PLLC ("RLF"), filed its complaint against the law firm Baker, Donelson, Bearman, Caldwell & Berkowitz, PC ("Baker Donelson") and Jonathan Hancock, Mary Katherine Campion, Jerrick Murrell, and Dean J. Shauger, who are attorneys at the firm. (ECF No. 1.) The allegations in the complaint focus on Baker Donelson's representation of RLF in another case from this district that resulted in a judgment against RLF in the amount of $3,631,095.92. (See Mosby v. Reaves Law Firm, PLLC, Case No. 2:23-cv-02099 (W.D. Tenn.), ECF Nos. 77, 78). RLF alleges several causes of action against Defendants, including legal malpractice. Defendants filed their answer, which includes a counterclaim by Baker Donelson for legal fees that it alleges remain unpaid by RLF from the Mosby case and other matters. (ECF No. 9.)

RLF filed a Partial Motion to Dismiss Baker Donelson's counterclaim.  (ECF No. 15.)
Defendants filed a Motion for Judgment on the Pleadings.  (ECF No. 16.)  Amid the briefing of
those motions, Defendants raised concerns that RLF was using generative artificial intelligence
("GAI") in the drafting of its filings, identifying a host of issues tied to the alleged GAI use.

Specifically, Defendants' response to RLF's Partial Motion to Dismiss asserts that
Plaintiff relies on cases that do not stand for the propositions for which they are cited, and, even
worse, RLF includes quotations from those cases that do not exist.  (See ECF No. 19.)  Two days
after Defendants initially raised the GAI issues, RLF filed a response to the Motion for Judgment
on the Pleadings.  (ECF No. 20.)  Then, three days after that, RLF filed a supplemental response.
(ECF No. 23.)

But, according to Defendants, those two filings contain more of the same issues that
surfaced in RLF's Partial Motion to Dismiss, and Plaintiff "remain(ed) steadfast in it misuse and
abuse of GAI" even after being put on notice of the GAI issues.  (ECF No. 24 at PageID 316.)
For instance, the Response to the Motion for Judgment on the Pleadings cites to numbered
paragraphs from RLF's complaint that do not exist and to facts that the complaint does not
allege.  (See ECF No. 20 at PageID 277 (citing to ¶¶ 69–70 of the complaint, which only
contains forty-seven numbered paragraphs).)  The response and its supplement also include
citations to cases that do not exist, misrepresent the holdings from cases that do exist, and
include quotations that were spun out of whole cloth.  (See, e.g., ECF No. 20 at PageID 277–79;
ECF No. 23 at PageID 297–99.)  Ultimately, Defendants argue that "Plaintiff's continued misuse
of GAI with false citations, quotes, and holdings warrants independently the sanction of
dismissal."  (ECF No. 24 at PageID 317.)

The Court's cursory review of Plaintiff's filings reveal support for Defendants' GAI-related allegations.  Given their serious nature, the Court ordered RLF to show cause "why the Court should not impose sanctions, which may include any or all of the following: monetary penalties, payment of Defendants' attorneys' fees, denying Plaintiff's Partial Motion to Dismiss, and granting Defendants' Motion for Judgment on the Pleadings."  (ECF No. 28 at PageID 393.)  The Order further required RLF to

> provide a list of all the cases it relies upon that Defendants call into question from Plaintiff's Partial Motion to Dismiss (ECF No. 15), Response in Opposition to Defendants' Motion for Judgment on the Pleadings (ECF No. 20), and Supplemental Response in Opposition to Defendants' Motion for Judgment on the Pleadings (ECF No. 23).  For each of the cases Plaintiff lists in that filing, Plaintiff's counsel shall do the following: (1) confirm whether the case exists and, if it does, describe the means by which its existence was verified; (2) confirm whether each case stands for the proposition Plaintiff cites; (3) confirm whether any language quoted actually comes from the cited case, or, if it does not, identify the case where it can be found if there is one; and (4) as to any case that does not exist, does not stand for the proposition for which it is cited, or does not contain the cited quotations, Plaintiff's counsel shall identify what steps, if any, it had taken prior to citing to the cases to verify their existence.  Finally, Plaintiff's counsel shall identify if there are any additional cases filed in any other matter currently before any court in the Western District of Tennessee in which counsel has cited to non-existent cases or cited fictitious quotations.  Plaintiff's counsel shall provide a list of any such cases and a citation to the specific filings in each of those cases that contain any such materials.

(Id.)  Plaintiff's counsel failed to follow these instructions.  (See ECF No. 31.)

Although the conclusions in this Order inform the Court's ruling on the merits of Plaintiff's Partial Motion to Dismiss and Defendants' Motion for Judgment on the Pleadings, those motions will be addressed separately.  This Order solely addresses Plaintiff's use of AI in drafting its filings in this case.  Because Plaintiff's improper and insufficiently explained use of AI in the drafting of its filings here violates Federal Rule of Civil Procedure 11, the Court sanctions RLF, as explained below.

3

## APPLICABLE LAW

Federal Rule of Civil Procedure 11(b) provides that,

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).

Violations of Rule 11 are sanctionable. Under the Rule, "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c). District courts are permitted to impose Rule 11 sanctions sua sponte. Bojicic v. DeWine, 145 F.4th 668, 671 (6th Cir. 2025) (finding such sanctions appropriate after allowing the opportunity to show cause as to why conduct did not violate Rule 11(b)); see also Fed. R. Civ. P. 11(c)(5)(B) ("The court must not impose a monetary sanction . . . on its own, unless it issued the show-cause order under Rule 11(c)(3).")

Sanctions under Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Civ.

4

P. 11(c)(4).  Referral of offending counsel for disciplinary action is also a permissible sanction.

See, e.g., King v. Whitmer, 71 F.4th 511, 533 (6th Cir. 2023).

> This Court's Local Rules also provide that
>
> All attorneys practicing before the United States District Court for the Western District of Tennessee shall comply with these Local Rules, the Rules of Professional Conduct as then currently promulgated and amended by the Supreme Court of Tennessee, and with the Guidelines for Professional Courtesy and Conduct as adopted by this court (APPENDIX C).
>
> (1)    For a willful violation of the said Code or these Rules, an attorney is subject to appropriate disciplinary action by the Court in accordance with the procedures contained in this Court's Order Adopting Rules of Disciplinary Enforcement (filed 9/29/1980; copy available in clerk's office), as amended from time to time.

LR 83.4(h).  The Court's Order Adopting Rules of Disciplinary Enforcement provides that "[a]cts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate the Code of Professional Responsibility adopted by this Court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship."  See Administrative Order No. 80-1, Rule IV.B.  That Order further explains that,

> When misconduct or allegations of misconduct which, if substantiated, would warrant discipline on the part of an attorney admitted to practice before this Court shall come to the attention of a Judge of this Court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these Rules, the Judge shall refer the matter to counsel for investigation and the prosecution of a formal disciplinary proceeding or the formulation of such other recommendation as may be appropriate.

Id., Rule V.A.  Under Administrative Order No. 80-1, "[w]henever counsel is to be appointed pursuant to these Rules to investigate allegations of misconduct or prosecute disciplinary proceedings or in conjunction with a reinstatement petition filed by a disciplined attorney, this

Court shall appoint as counsel the Disciplinary Board of the Supreme Court of Tennessee[.]" Id.,

Rule X.

## **ANALYSIS**

The Order to Show Cause identified three problematic filings by Plaintiff: its Partial

Motion to Dismiss (ECF No. 15), its Response in Opposition to Defendants' Motion for

Judgment on the Pleadings  (ECF No. 20), and its Supplemental Response in Opposition to

Defendants' Motion for Judgment on the Pleadings (ECF No. 23).[1]  Provided with an

opportunity to demonstrate why it should not face sanctions under Rule 11, RLF submitted a

response to the Order to Show Cause that failed to provide much of the information the Court

demanded, and that is otherwise deficient in many respects.

As a starting point, other than a fleeting reference to an internal company email regarding

the steps the firm took "to ensure ethical, responsible use of AI technology" (ECF No. 31 at

PageID 419; see also id. at PageID 425–27), RLF does not acknowledge that AI had any role in

the drafting of the filings at issue.

And, although, RLF's response purports to "accept[] full and complete responsibility for

the filing errors identified by the Court" (ECF No. 31 at PageID 417), throughout its response,

RLF simultaneously minimizes the issues for which it is accepting responsibility, and appears to

cast blame elsewhere.  RLF characterizes the issues Defendants and the Court identified as

"purely clerical, limited to formatting and inadvertent citation inclusions."  (Id. at PageID 419.)

RLF asserts that "[n]one of the errors were substantive or misleading, and no party was

---

[1] In its response to the Order to Show Cause, Plaintiff references a fourth document, Plaintiff's Answer to Defendant Baker Donelson's Counterclaim (ECF No. 14), which it filed the same day as its partial motion to dismiss.  (ECF No. 31 at PageID 417–18.)  Plaintiff asserts that both of those documents "were internal drafts never authorized for filing."  (Id. at PageID 418.) Both of those documents are addressed in more detail below.

6

prejudiced." (Id.) It also argues that "Defendants' own Memorandum in Support of their Motion for Judgment on the Pleadings does not assert that Plaintiff misstated any rule, procedural standard, or controlling precedent, nor does it claim that Plaintiff's substantive statements of law were incorrect." (Id. at PageID 418.)

RLF also offers mitigating factors that purport to help explain the issues in its filings. It cites to the "extraordinary circumstances" that "explain how a procedural lapse occurred amid extraordinary operation strain," which included a mass exodus of its employees following the verdict against RLF that prompted this lawsuit. (ECF No. 31 at PageID 420.)[2] RLF asserts that "[w]hile these circumstances do not excuse the error, they explain how a procedural lapse occurred amid extraordinary operational strain." (Id.) Ultimately, RLF "requests that the Court consider these mitigating circumstances and avoid imposing any sanction that would permit Defendants to benefit from their own alleged wrongdoing." (Id.)[3]

---

[2] In its supplemental response to the Motion for Judgment on the Pleadings, RLF represents that, at the time of the Mosby trial, it had at least eighty employees. (ECF No. 23 at PageID 299.) RLF characterizes the number of departures in the wake of the Mosby verdict, which included "its COO, CHRO, CFO, all associate attorneys, and several senior staff," as being unprecedented. (ECF No. 31 at PageID 419.) In an affidavit attached to its response to the Order to Show Cause, RLF's payroll vendor supports that description, and indicates that, between May and October 2025, "a total of forty-four (44) employees have separated from employment with [RLF]." (ECF No. 31 at PageID 429.) At the October 23, 2025, scheduling conference, Reaves represented that, in the wake of the verdict against his firm, "[m]ore than likely, I'll have to lay off 50, 60, 70 people in this economy." (ECF No. 30 at PageID 405.) It is unclear how these numbers interact with one another and how many people RLF employs.

[3] RLF's response also includes a list of some of counsel Henry Reaves's accomplishments, outlines additional steps it has taken to ensure that similar AI incidents do not happen in the future, and assures the Court that counsel "recognizes the paramount importance of the Rules of Professional Conduct and the transparency in all filings." (See id. at PageID 419, 421–22.) Then, after "accept[ing] sole responsibility for the oversight," counsel explains that RLF "no longer employs the attorney who served as General Counsel at the time, and internal filing supervision has been restructured." (Id. at PageID 419.) To the extent RLF attempts to lay blame on departed personnel for the transgressions discussed herein, it has failed to demonstrate the sort of exceptional circumstances that would warrant not holding the firm jointly responsible

However, in its response, RLF acknowledges only three cases that it relied upon as being problematic: Seaton v. Lawson Chevrolet-Mazda, Inc., Press v. Vanderbilt University, and Thornbury v. Madison County.  Although RLF characterizes the cases as "improper and unverified" (ECF No. 31 at PageID 418), "improper and unverified" does not sufficiently describe those cases and RLF's use of them.

RLF cites Seaton in its initial response to the Motion for Judgment on Pleadings for the proposition that "[a] fiduciary duty of loyalty exists independent of negligence."  (ECF No. 20 at PageID 279.)  However, that case dealt with the appropriateness of a claim for punitive damages related to the sale of a car that had been previously damaged.  It has nothing to do with fiduciary duties or the facts of this case.

Seaton, although not relevant, was at least a real case.  The same cannot be said for Press v. Vanderbilt University, which RLF cites in its supplement to illustrate the concept of actual malice in the context of libel.  The cite for that alleged case takes one to a No-Action Letter from the Securities and Exchange Commission.  See Washington Gas Light Co., 1996 WL 684198, at *1 (S.E.C. No - Action Letter Nov. 27, 1996).  The Court was unable to find any case captioned Press v. Vanderbilt from any federal or state jurisdiction.

Finally, RLF cites to Thornbury v. Madison Cnty., 242 F. Supp. 3d 851, 860 (W.D. Tenn. 2017), in its supplement to address the applicability of qualified privilege.  However, the closest match to that citation is a 2017 case whose similarities to the case Plaintiff concocted begin and end with the year and cardinal direction included in the Court's name.  See Jackson v. Lew, 242

---

for violations committed by its employees, particularly in light of the fact that Mr. Reaves signed the offending pleadings.  See Fed. R. Civ. P. 11(c).

F. Supp. 3d 850, 860 (W.D. Mo. 2017). <u>Jackson</u> involves a claim of discrimination against the Department of the Treasury. It has no relevance to any of the facts here.

Those three citations, although perhaps the most egregious examples of RLF's AI usage, were not all of the problematic authorities it relied upon. Defendants also identified the following:

- <u>Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C.</u>, 813 S.W.2d 400 (Tenn. 1991), from which Plaintiff includes a quote that does not exist.

- <u>White v. McBride</u>, 937 S.W.2d 796 (Tenn. 1996), from which Plaintiff also includes a quote that does not exist.

- <u>Hoover v. Langston Equip. Assocs., Inc.</u>, 958 F.2d 742 (6th Cir. 1992), which Plaintiff cites for the proposition that there is no "authority imposing fiduciary duties from a client back to a lawyer" (ECF No. 15-1 at PageID 167), even though that case does not address the attorney-client relationship, and only addresses the concept of fiduciary duties by asserting that the district court's dismissal of the claim was proper based on an absence of jurisdiction. <u>See</u> <u>Hoover</u>, 958 F.2d at 745.

- <u>Whitehaven Cmty. Baptist Church v. Holloway</u>, 973 S.W.2d 592 (Tenn. 1998), which Plaintiff cites for the proposition that "[c]onstructive trust and unjust enrichment are unavailable where an express contract governs" (ECF No. 15-1 at PageID 168), although constructive trusts are not referred to in the opinion, and for which Defendants do not assert a claim.

- <u>Cracker Barrel Old Country Store, Inc. v. Epperson</u>, 284 S.W.3d 303 (Tenn. 2009), which Plaintiff cites for the proposition that "[f]ee-shifting provisions are narrowly construed" (ECF No. 15-1 at PageID 168), even though the only mention of fee-

shifting in that case involves a fee-shifting provision that applies to public officers

and employees in Tennessee.

- Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383 (Tenn. 2002), which

    Plaintiff cites for the proposition that, "[w]hile attorneys are not liable for reasonable

    strategy decisions, immunity does not shield neglect, abdication of duty, or

    disloyalty" (ECF No. 20 at PageID 278), although that case's unrelated holding is

    "that an insurer and an insured may be held vicariously liable for the tortious acts or

    omissions of an attorney hired to defend the insured, if the attorney's tortious actions

    were directed, commanded, or knowingly authorized by the insurer or by the

    insured." Givens, 75 S.W.3d at 393.

In its response to the Order to Show Cause, RLF does not directly address those seven cases and

the problems associated with their citations.

Indeed, for each of those seven cases, as well as the three cases that RLF referenced as

"improper and unverified," RLF took none of the steps that the Court required it to take. That is,

RLF did not directly confirm whether those cases existed or describe the means by which their

existence was verified. It did not confirm whether the cases stood for the proposition for which

they were cited. It did not confirm whether any language quoted actually came from the cited

cases, or, if it did not, identify the case where it can be found if there was one. RLF did not—for

cases that did not exist, did not stand for the proposition for which they were cited, or did not

contain the cited quotation—identify what steps, if any, it had taken prior to citing to the cases to

verify their existence.[4]

---

[4] RLF's response includes an email from July 15, 2025, sent from Henry Reaves with the subject line "Mandatory Ethical AI Training & Reporting Protocols for All Staff." (ECF No. 31 at PageID 425.) That email appears to have been sent to two RLF employees with the directive

RLF also did not identify if there are any additional cases filed in any other matter currently before any court in the Western District of Tennessee in which RLF cited to non-existent cases or cited fictitious quotations. It did not provide a list of any such cases and a citation to the specific filings in each of those cases that contain any such materials.

Despite failing to do almost everything that the Court required it to do, RLF nevertheless seeks three forms of relief in its response, including the confusing request that the Court "[s]trike or permit substitution of the inadvertent filings." (Id. at PageID 417, 422.) Although it is not entirely clear, RLF's Answer (ECF No. 14) and Partial Motion to Dismiss (ECF No. 15), appear to be the only documents that it identifies as being an inadvertently filed. However, a response to an Order to Show Cause is an improper vehicle to move to strike pleadings, and striking the filings would not resolve the issues the Order to Show Cause identified, particularly given the significant problems in other filings. In any event, if the Court were to strike those filings, there would not be a responsive pleading from RLF to Baker Donelson's counterclaim on the docket. Further, it is not clear what RLF would like to be substituted for these inadvertent filings.

Beyond asking that filings be stricken or substituted, RLF concludes its response to the Order to Show Cause with two additional requests: that the "Court . . . [a]ccept this Response as good cause," and that the Court "[d]ecline to impose sanctions that would effectively reward Defendants for the misconduct." (ECF No. 31 at PageID 422.)

---

"[p]lease make any modifications you need to and distribute to the entire firm tomorrow." (Id.) RLF provides no evidence that the protocol was distributed to any other firm employees, and, although that email refers to an "upcoming Ethical AI Training" that "is mandatory for all attorneys and staff," it does not provide any evidence that such a training took place. But even if it did, it did not prevent the AI-related issues described herein.

11

Neither request is well taken.  RLF attempts to minimize the impact of its use of GAI on these proceedings.  But, RLF "committed inexcusable transgressions" here, "[a]nd that misconduct had consequences."  United States v. Farris, 171 F.4th 920, 923 (6th Cir. 2026).  The Court detailed many of those consequences in its Order to Show Cause, such as "wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)."  (ECF No. 28 at PageID 392 (quoting Buckner v. Hilton Glob., No. 3:24-CV-375-RGJ, 2025 WL 1725426, at *7 (W.D. Ky. June 20, 2025).)

Moreover, as the Court explained, the harms that can flow from the use of fabricated citations go much further, and include that "the opposing party wastes time and money in exposing the deception"; "[t]he Court's time is taken from other important endeavors"; "[t]he client may be deprived of arguments based on authentic judicial precedents"; "potential harm to the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and to the reputation of a party attributed with fictional conduct"; "promot[ing] cynicism about the legal profession and the American judicial system"; and that "a future litigant may be tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity."  (See id. (quoting Mata v. Avianca, Inc., 678 F. Supp. 3d 443, 448–49 (S.D.N.Y. 2023)).)

The possibility of confusion that results from citation to and reliance upon hallucinated cases or quotations has even prompted the online legal research platform Westlaw to append editor's notes to cases that address AI-generated cases.  See, e.g., Farris, 171 F.4th 920 ("**Editor's Note**: This document contains discussion of unverified citations, likely generated by AI tools used by a party or counsel.  These citations are not attributable to the Court.  The unverified citations have been preserved as part of the official record, but links are unavailable.")

Lexis has done the same.  See id. ("Notice: This decision contains references to invalid citations in the original text of the opinion. They are relevant to the decision and therefore have not been editorially corrected.  Linking has been removed from those citations.")

The Sixth Circuit has addressed the harms that can come from "artificial-intelligence missteps" in several recent cases, ultimately concluding, unsurprisingly, that an attorney's ethical obligations cannot be outsourced to an artificial intelligence program, and has issued stark sanctions for attorneys who have attempted to do so.  The court took the opportunity in Farris "to reiterate attorneys' baseline ethical obligations as they relate to the use of artificial intelligence." 171 F.4th at 922.  The court acknowledged the promise of new technologies, but explained that "all in the legal profession must be clear eyed about technology's potential pitfalls," which "is especially critical in today's rapidly evolving artificial-intelligence landscape."  Id.

Farris reminded practitioners that an attorney's duty of competence requires keeping up with "changes in the law and its practice" including "relevant technology."  Id. (quoting Model Rules of Pro. Conduct. r. 1.1 cmt. 8 (A.B.A. 2012)).  The court reiterated that "attorneys who choose to use artificial-intelligence tools must do so in a manner consistent with their ethical obligations."  Id. at 922–23 (citing the compilation of state bar ethics rules and guidance on GAI found in A.B.A. Task Force on L. & A.I., Addressing the Legal Challenges of AI: Year 2 Report on the Impact of AI on the Practice of Law, 47–48 (2025).)

Ultimately, the holdings from the Sixth Circuit and other jurisdictions regarding the improper use of AI reveal that, whether authorities are sourced from reporters found on the dusty shelves of law school libraries, from online legal research platforms, or from AI tools, it does not change an attorney's "ethical obligation to verify the citations and propositions they submit to courts," as "that obligation reflects duties of competence and candor that apply no matter the

tools attorneys use." Id. at 923 (citations omitted).  At bottom, violating that duty of candor can "render[] the litigation a sham," and "'unnecessarily impedes' the 'resolution' of the cases that the lawyers are litigating and is therefore 'prejudicial to the administration of justice.'"  Whiting v. City of Athens Tennessee, 170 F.4th 455, 466 (6th Cir. 2026) (quoting Dunlap v. Bd. of Pro. Resp. of Sup. Ct. of Tenn., 595 S.W.3d 593, 615 (Tenn. 2020) (citation modified).

Consistent with the foregoing, and reflecting the serious nature of RLF's ethical lapses here, the Court issues the following sanctions pursuant to its authority under Federal Rule of Civil Procedure 11 and this Court's Local Rules, and based on counsel's failure to abide by their obligations under the Model Rules of Professional Conduct and the Tennessee Rules of Professional Conduct:

1. RLF must reimburse Defendants for the costs associated with the drafting of the filings in this matter that were responsive to RLF's filings that included improper citations, i.e., ECF Nos. 19, 24, 26, and 32.  Defendants must file an accounting of their costs and attorneys' fees for those filings, with supporting documentation and consistent with Local Rule 54.1(b), no later than fourteen days from the entry of this Order.  RLF shall have fourteen days from Defendants' filing to file any responses or objections. No replies will be allowed.

2. The Clerk shall forward this Order to the other judges in this District.

3. The Clerk shall also forward this Order to the Tennessee Board of Professional Responsibility's Disciplinary Counsel, at 10 Cadillac Drive, Suite 220, Brentwood, Tennessee 37027.  RLF shall notify this Court within fourteen days of any BPR adjudication related to this referral.

The Court finds these sanctions, although significant, are appropriately limited under

14

Rule 11(c)(4) to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  RLF is warned that, if its firm or any attorneys employed by it improperly utilize artificial intelligence tools in the future in this Court, the penalties will be significant, and may include payment of penalties into the Court or a judgment against the firm and its client in the case at issue.

  **IT IS SO ORDERED,** this 2nd day of June, 2026.

       s/ Sheryl H. Lipman
       SHERYL H. LIPMAN
       CHIEF UNITED STATES DISTRICT JUDGE