**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

REAVES LAW FIRM, PLLC,

    Plaintiff,

v.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC;
JONATHAN HANCOCK; MARY
KATHERINE CAMPION; JERRICK
MURRELL; DEAN J. SHAUGER; and
JOHN DOES 1–3,

    Defendants.

No. 2:25-cv-2623-SHL-atc

---

**ORDER DENYING PLAINTIFF'S PARTIAL MOTION TO DISMISS AND GRANTING
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

---

Before the Court are two motions.  First is Plaintiff Reaves Law Firm, LLC's ("RLF"),

Partial Motion to Dismiss Defendants' Counterclaim (Count II and Associated Remedies).  (ECF

No. 15.)  Defendants Baker, Donelson, Bearman, Caldwell & Berkowitz, PC ("Baker

Donelson"), Jonathan Hancock, Mary Katherine Campion, Jerrick Murrell, and Dean J. Shauger

filed a timely response.  (ECF No. 19.)  The second Motion is Defendants' Motion for Judgment

on the Pleadings.  (ECF No. 16.)  Plaintiff filed a response to that motion, as well as a

supplemental response.  (ECF Nos. 20, 23.[1])  Defendants replied to those responses.  (ECF No.

24.)

---

[1] Plaintiff confusingly docketed the supplemental response as also being a response in
opposition to its own partial motion to dismiss.  The supplement is obviously not a response to
its own motion.  Nor does it in any way reply to Defendants' response to the partial motion to
dismiss.  It is only responsive to Defendants' Motion for Judgment on the Pleadings.

For the reasons outlined below, Plaintiff's Motion is **DENIED** and Defendants' Motion is **GRANTED**.

## BACKGROUND

This case began as a lawsuit against the law firm Baker Donelson and several of its attorneys. RLF hired Baker Donelson, which employs defendants Hancock, Campion, Murrell, and Shauger as attorneys, to defend it in the case Andrea Jaye Mosby v. Reaves Law Firm, PLLC, 2:23-cv-02099-SHM-tmp ("Mosby"). In that case, Andrea Mosby, RLF's former Chief People Officer, sued RLF for retaliating against her and terminating her employment in violation of Title VII, the Equal Pay Act, and the Fair Labor Standards Act. (See, id., ECF No. 1.)

After a three-day trial presided over by District Judge Samuel H. Mays, a jury returned a verdict on May 7, 2025, in favor of Mosby. (Mosby, ECF No. 54.) On August 21, 2025, the court entered orders denying RLF's motion for relief from the judgment (Mosby, ECF No. 77), and entered judgment against RLF for $3,631,095.92 (Mosby, ECF No. 78 at PageID 1333).[2]

On June 18, 2025, between the verdict and the judgment, RLF filed this lawsuit. (ECF No. 1.) Like the motion seeking relief from the judgment in the underlying suit, this lawsuit takes issue with the representation Baker Donelson and its attorneys provided in Mosby. RLF's complaint asserts five causes of action related to that representation: legal malpractice, breach of fiduciary duty, civil conspiracy, negligent misrepresentation, and violation of 42 U.S.C. § 1981 (Discrimination in Contractual Relations). (ECF No. 1 at PageID 4–7.)

RLF identifies several alleged missteps taken by Defendants during their representation, beginning with their failure to file a counterclaim against Mosby, even though RLF's CEO,

---

[2] On May 4, 2026, the Sixth Circuit dismissed RLF's appeal of the Mosby judgment as untimely filed. (Id., ECF No. 107.)

Henry Reaves III, instructed them to do so and provided them with materials that would have supported such a claim. (Id. at PageID 2.) RLF asserts additional shortcomings in the representation, including that "[c]ritical impeachment evidence and medical documentation were ignored"; "Defendants submitted inadequate direct examination scripts, excluded key facts, and presented a redacted exhibit that distorted Mosby's behavior"; "lead defense counsel engage[d] in collegial exchanges with opposing counsel during trial"; and "[b]illing records also show post-deadline charges, duplicative entries, and tasks unrelated to trial preparation. Defendants' cumulative errors, omissions, and disloyalty deviated grossly from accepted legal standards." (Id. at PageID 3.) RLF also asserts that its attorneys did not object when Reaves was referred to as "the dumbest lawyer in America" during the trial. (Id.)

Beyond the allegations related to counsel's substandard representation, RLF contends that counsel also had conflicted loyalties, which were on display when RLF's CEO "personally witnessed lead defense counsel Jonathan Hancock smiling and engaging in a collegial exchange with opposing counsel during trial in which opposing counsel stated, 'We've made a lot of money together and we'll make a lot more.'" (Id. at PageID 4.) Ultimately, RLF alleges that "Defendants engaged in communications with opposing counsel and/or third parties that undermined Plaintiff's case." (Id. at PageID 5.) RLF also alleges that Defendants "made material misrepresentations regarding the viability of counterclaims, the strength of Plaintiff's defense, and the risks associated with trial," which Plaintiff relied upon to his detriment. (Id. at PageID 6.)

Finally, RLF asserts that Defendants, "individually and collectively, treated Plaintiff differently than similarly situated white clients," and their "repeated refusals to assert valid defenses, admit critical evidence, and defend Plaintiff's reputation in open court were motivated,

3

at least in part, by racial bias or internalized perceptions that a Black-owned law firm was less

deserving of zealous advocacy."  (Id. at PageID 6–7.)

On August 18, Defendants filed their answer to RLF's complaint, which included Baker

Donelson's two-count counterclaim (ECF No. 9) that is the subject of RLF's partial motion to

dismiss.  The counterclaim alleges that RLF and Baker Donelson entered into a contract for legal

services, pursuant to which "Baker Donelson performed legal work for Plaintiff over the course

of 2022-2025."  (Id. at PageID 52.)  According to Baker Donelson, RLF defaulted under the

terms of the contract and, based on the firm's representation of RLF in three matters, including

Mosby, RLF owes Baker Donelson $170,921.09 in unpaid legal fees.  (Id. at PageID 53.)

Count I of the counterclaim is characterized as "Breach of Agreement," and consists of

the following three substantive paragraphs:

14.  Plaintiff has defaulted on its obligations under the terms of the Agreement.
15.  Plaintiff's account with Baker Donelson is past due, with an outstanding balance of $170,921.09
16.  Pursuant to the terms of the Agreement, Plaintiff is obligated for the entire outstanding indebtedness owed on the Agreement.

(Id. at PageID 54.)

Count II of the counterclaim is characterized as "Unjust Enrichment," and consists of the

following four substantive paragraphs:

18.  Baker Donelson's provision of legal services to Plaintiff conferred a benefit upon Plaintiff.
19.  Plaintiff has appreciated the benefit of Baker Donelson's legal services for Plaintiff's operation.
20.  Allowing Plaintiff to retain the benefit of the legal services provided by Baker Donelson without payment to Baker Donelson would be unjust and inequitable.
21.  Accordingly, and in the alternative, Baker Donelson demands judgment against Plaintiff for unjust enrichment in the amount of $170,921.09, together with all accruing interest and costs, including, without limitation, attorneys' fees and legal expenses incurred by Baker Donelson.

(Id. at PageID 54–55.)

On June 2, 2026, the Court entered an Order Issuing Rule 11 Sanctions to Plaintiff for the Misuse of Artificial Intelligence in Court Filings (the "Sanctions Order").  (ECF No. 37.)  The Sanctions Order solely addressed Plaintiff's use of AI in drafting its filings, including those that pertain to the motions now before the Court.  The Court explained that, although the conclusions in the Sanctions Order would inform the Court's analysis of the instant motions, these motions would be addressed separately.  This is that Order.

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss a complaint for failure to comply with the requirements of Rule 8(a)(2).  Fed. R. Civ. P. 12(b)(6).  Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must contain sufficient facts to "state a claim to relief that is plausible on its face," meaning it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)).  The complaint need not set forth "detailed factual allegations," but it must include more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (citing Twombly, 550 U.S. at 555, 557).  When considering a 12(b)(6) motion, courts must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  Adkisson v. Jacobs Eng'g Grp., Inc., 790 F.3d 641, 647 (6th Cir. 2015) (internal citation omitted).

Rule 12(c) governs motions for judgment on the pleadings and provides that, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on

5

the pleadings." A motion for judgment on the pleadings is evaluated using the same standard as a 12(b)(6) motion to dismiss. HDC, LLC v. City of Ann Arbor, 675 F.3d 608, 611 (6th Cir. 2012). So, "[a] judgment on the pleadings is proper 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" Anders v. Cuevas, 984 F.3d 1166, 1174 (6th Cir. 2021) (quoting Paskvan v. City of Cleveland Civil Serv. Comm'n, 946 F.2d 1233, 1235 (6th Cir. 1991)). In evaluating a motion for judgment on the pleadings, a court will "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the complaint contains enough facts to make the legal claims facially plausible." Anders, 984 F.3d at 1174.

## ANALYSIS

### I. RLF's Partial Motion to Dismiss

The Court need not spend much time addressing Plaintiff's Partial Motion to Dismiss. Indeed, although it is not entirely clear, Plaintiff's intention may have been that the Court not spend any time on it at all. After the Court entered its Order to Show Cause directing Plaintiff to explain its use of generative artificial intelligence in its filings in this case, Plaintiff responded and characterized its Partial Motion to Dismiss—as well as its Answer to Baker Donelson's counterclaim—as inadvertently filed, and moved to "[s]trike or permit substitution of the inadvertent filings." (ECF No. 31 at PageID 417, 422.) However, as the Court explained in the Sanctions Order, "a response to an Order to Show Cause is an improper vehicle to move to strike pleadings." (ECF No. 37 at PageID 470.) The Court did not strike the Partial Motion to Dismiss, and therefore briefly addresses it.[3]

---

[3] The Court also noted that, to the extent RLF sought to strike both its Partial Motion to Dismiss and its answer, "if the Court were to strike those filings, there would not be a responsive pleading from RLF to Baker Donelson's counterclaim on the docket." (Id.)

RLF's Motion seeks "to dismiss Count II of Defendants' Counterclaim," which it describes as "purporting to assert 'Breach of Fiduciary Duty'" as well as "the add-on remedies pleaded thereunder." (ECF No. 15 at PageID 162.) RLF asserts that "Count II fails as a matter of law because Tennessee does not recognize an independent fiduciary duty running from a client to its former law firm; the counterclaim impermissibly duplicates contract and tort theories already pleaded; and the demand for punitive and exemplary remedies is facially unsustainable." (Id.)

Contrary to RLF's assertion, the counterclaim does not include a count for breach of fiduciary duty. Count I is a claim for breach of contract. Count II, made in the alternative, is a claim for unjust enrichment. As for the effort to dismiss Baker Donelson's request for punitive damages, its claim for "exemplary remedies," and its equitable remedies based on "constructive trust" and "disgorgement," as well as its "add on remedies," (id. at PageID 162–63), Baker Donelson's counterclaim seeks no such remedies.[4]

Because Plaintiff's Partial Motion to Dismiss seeks to dismiss claims that do not exist, and to extinguish remedies that Baker Donelson does not seek, the Motion is **DENIED**.

## II.    Defendants' Motion for Judgment on the Pleadings

Defendants assert that they are entitled to judgment on the pleadings for multiple reasons, including that RLF's complaint fails to plead facts against the individual Defendants, and that it fails to plead facts that state plausible claims for legal malpractice, breach of fiduciary duty, civil conspiracy, negligent misrepresentation, or discrimination under § 1981. Defendants also assert that, even though RLF filed two responses to their Motion, neither of those filings respond to a

---

[4] Baker Donelson speculates that RLF's Motion actually seeks to dismiss Count II of its own complaint, which is, in fact, a claim for Breach of Fiduciary Duty. (See ECF No. 1 at PageID 5.)

host of positions and arguments advanced in the Motion, warranting dismissal of the claims on

that basis alone.  Each of Defendants' arguments is addressed below.

A.    Judicial Notice of the Mosby Record

Defendants' Motion begins by asserting that "the public record is essential to a fair and

efficient adjudication of this Motion and therefore Defendants respectfully request this Court

take judicial notice of all filings in the Mosby Case."  (ECF No. 17 at PageID 176.)  Taking

judicial notice of the Mosby record is important, according to Defendants, because once this

"irrefutable, factual public record," is considered, it reveals that "[a]ll of Plaintiff's meager

'factual' allegations bear no resemblance to reality," and establishes the lack of plausibility for

RLF's claims.  (Id. at PageID 180.)  And, if the Court views Plaintiff's complaint through this

lens, it shows that "Plaintiff fails to plead any facts supporting any count in the Complaint."  (Id.)

RLF counters that judicial notice is inappropriate here, as the Sixth Circuit has made it

clear that judicial notice "does not extend to adopting one party's version of disputed facts."

(ECF No. 20 at PageID 277.)  So, Plaintiff contends, "the Court may recognize the existence of

prior filings but not accept as true the disputed factual assertions within them."  (Id. at PageID

276 (citing Jones v. City of Cincinnati, 521 F.3d 555, 562 (6th Cir. 2008)).)

Taking judicial notice of the Mosby record is appropriate in this case.  Although it is

generally true that courts cannot consider documents outside of the complaint at the motion to

dismiss stage, the Sixth Circuit has recognized that, "if public records refute a plaintiff's claim, a

defendant may attach those documents to its motion to dismiss, and a court can then consider

them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule

56 motion for summary judgment."  Watermark Senior Living Ret. Cmtys., Inc. v. Morrison

Mgmt. Specialists, Inc., 905 F.3d 421, 425 (6th Cir. 2018) (quoting In re Omnicare, Inc. Sec.

8

Litig., 769 F.3d 455, 466 (6th Cir. 2014)).  Documents from other court proceedings, including

Mosby, qualify as such public records, and therefore will be considered here.  Id. (citing Buck v.

Thomas M. Cooley Law Sch., 597 F.3d 812, 816 (6th Cir. 2010)).[5]

     Jones v. Cincinnati does not undermine this principle, as RLF alleges.  In that case, the

court concluded that a videotape of a police encounter submitted with a motion to dismiss should

not be considered because it "capture[d] only part of the incident and would provide a distorted

view of the events at issue."  Id. at 562.  Ultimately, the court concluded that, "on a motion to

dismiss, courts must only take judicial notice of facts which are not subject to reasonable

dispute."  Id. (quoting Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005)).

Although RLF might dispute some of the factual assertions found in the filings from the record

from Mosby, the Court relies on the portions of that record—particularly the verdict in that

case— that are not subject to reasonable dispute.

     Plaintiff also argues that Defendants' reliance on Scott v. Harris, 550 U.S. 372 (2007), is

inappropriate, as that case was decided at the summary judgment stage, not at the motion to

dismiss stage.  Plaintiff's position is not well taken.  Defendants cite Scott for the proposition

---

[5] At the same time, RLF suggests that its supplemental response is offered "to present additional evidence and clarify key facts that further demonstrate Defendants' negligence, disloyalty, and bad faith in the underlying Mosby v. Reaves Law Firm, PLLC litigation."  (ECF No. 23 at PageID 295.)  The supplement includes several attachments, including emails and affidavits that RLF contends support its positions.  It appears as if one of those records is an unredacted email that was presented in Mosby.  (ECF No. 23 at PageID 304–05.)  The unredacted version was not allowed in as evidence in Mosby (see ECF No. 9-5 at PageID 99–103; see also Mosby, ECF No. 48), but it was included by RLF in opposition to a motion in limine (see Mosby, ECF No. 47-1), and is thus part of the record that the Court can consider. The other attachments RLF included in its supplement do not appear to be a part of the Mosby record, and RLF does not suggest they were.  The Court does not consider them here, as they do not qualify as public records, and a party cannot "amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint."  Waskul v. Washtenaw Cnty. Cmty. Mental Health, 979 F.3d 426, 440 (6th Cir. 2020) (quoting Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 483 (6th Cir. 2020)).

9

that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (ECF No. 17 at PageID 175 (quoting Scott, 550 U.S. at 380).) But Defendants accurately assert that the Sixth Circuit "has imported that principle to Rule 12 motions," so that "if a plaintiff's pleadings internally contradict verifiable facts central to his claims, that makes his allegations implausible." (Id. (quoting Bailey v. City of Ann Arbor, 860 F.3d 382, 386-87 (6th Cir. 2017).)

Although the Court is bound to consider the facts in the light most favorable to Plaintiff when considering the Motion for Judgment on the Pleadings, it cannot turn a blind eye to Mosby. The record there reveals that the bulk of the allegations contained in Plaintiff's complaint, particularly those associated with its malpractice claim, are implausible as pled, warranting dismissal under Rule 12(c).[6]

### B.      Pleading Against Individual Defendants

Defendants assert that Plaintiff does not allege that it had contracts with the individual Defendants, and otherwise fails to plead any factual basis for claims against them individually.

---

[6] Twice in RLF's initial response to Defendants' Motion it asks that, "[t]o the extent the Court finds any technical deficiency in Plaintiff's allegations, Plaintiff respectfully requests leave to amend under Rule 15(a)(2)." (See ECF No. 20 at PageID 278, 280.) However, "[a] bare request in an opposition to a motion to dismiss (or for judgment on the pleadings) without any indication of the particular grounds on which amendment is sought does not constitute a motion within the contemplation of Rule 15(a)." Hasting v. First Cmty. Mortg., 2018 WL 5808727, at *5 (M.D. Tenn. Nov. 6, 2018) (citing PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 699 (6th Cir. 2004)). It also runs afoul of Local Rule 15.1(a), which provides that "[a] motion to amend or supplement a pleading must include as an appended exhibit the signed proposed amended or supplemental pleading." Ultimately, a Plaintiff is "not entitled to an advisory opinion from the Court informing [it] of the deficiencies of the complaint and then an opportunity to cure those deficiencies." Begala v. PNC Bank, Ohio, Nat. Ass'n, 214 F.3d 776, 784 (6th Cir. 2000). Plaintiff's request for leave to amend is improper and the Court does not consider it.

(ECF No. 17 at PageID 181–82.)  In response, RLF claims that it avoids impermissible group pleading by distinguishing each attorney's conduct.  (ECF No. 20 at PageID 277–78.)

"Courts generally frown upon group pleading."  Monaco Indus., LLC v. Fomento Econ. Mexicano S.A.B. de C.V., 685 F. Supp. 3d 654, 673 (E.D. Tenn. 2023) (citation and quotation omitted); see also Doe v. Red Roof Inns, No. 2:24-cv-01780, 2025 WL 724613, at *9 (S.D. Ohio Mar. 6, 2025) (explaining that group pleading has generally been found improper in cases involving fraud and the associated Rule 9(b) heightened pleading standard, as well as in the context of § 1983 cases).  However, there is no categorical prohibition against such pleading, and outside of the 9(b) and § 1983 contexts, a court's primary inquiry is a familiar one: "whether a complaint meets the standard of Rule 8, which requires a short and plain statement that plausibly states a claim for relief against a defendant, independent of the form of such complaint." McMahan v. Olin Corp., No. 1:24-cv-96, 2025 WL 4734596, at *3 (E.D. Tenn. Dec. 23, 2025) (citation omitted).

Plaintiff's contention that it "exceeds [the Rule 8] standard by offering fact-specific allegations tied to each individual," overstates the content of its complaint.  (ECF No. 20 at PageID 278.)  Further, when it alludes to some of the "fact-specific allegations tied to each individual" in its response to the Motion, RLF cites to content—and paragraphs—that do not exist in the complaint.  (See, e.g., id. at PageID 277 (alleging that Campion is identified as taking certain actions in ¶ 47 of the complaint, even though that paragraph is the complaint's prayer for relief); id. (alleging that Hancock and Shauger are identified in ¶¶ 69–70 complaint "as attorneys responsible for trial preparation who failed to ensure impeachment evidence was used" even though there are only forty-seven paragraphs in the complaint).)

11

Nevertheless, the Court will not strike all of the claims against all of the individual Defendants based on Defendants' assertion that RLF engaged in group pleading. Although the infirmities Defendants identify include some examples of what could be considered to be group pleading, the allegations here do not universally fail to put Defendants on notice of the claims against them. But, in any event, the claims that are not properly plead against individual Defendants are otherwise dismissible as outlined below.

C.    Sufficiency of Plaintiff's Claims

i.    Plaintiff's Claim for Legal Malpractice

Making out a prima facie claim of legal malpractice under Tennessee law requires a plaintiff to show the following five elements: "(1) the attorney owed a duty to the plaintiff; (2) the attorney breached that duty; (3) the plaintiff suffered damages; (4) the breach was the but for cause of the plaintiff's damages; and (5) the breach was the proximate cause of the plaintiff's damages." In re Blasingame, 986 F.3d 633, 638 (6th Cir. 2021) (citing Gibson v. Trant, 58 S.W.3d 103, 108 (Tenn. 2001)).

The foundation of RLF's malpractice claim is that Defendants breached their duty to perform legal services competently and diligently "by failing to call witnesses, pursue counterclaims, object to improper conduct in court, protect Plaintiff's reputation, and present key evidence." (ECF No. 1 at PageID 4.) Plaintiff's complaint and dual responses to the Motion for Judgment on the Pleadings lay out a scattershot collection of ways in which Defendants' actions before and during the Mosby trial allegedly constitute malpractice.

Defendants do not contest the fact that they owed a duty to RLF. Instead, they assert that RLF's malpractice claim must be dismissed based on the judgmental immunity doctrine, because

RLF "fails to allege any facts demonstrating Defendants' trial decisions were anything other than honest exercises of professional judgment." (ECF No. 17 at PageID 182–83.)

"The judgmental immunity doctrine recognizes that an attorney is not liable for mistakes made during litigation in the honest exercise of professional judgment." Allied Waste N. Am., Inc. v. Lewis, King, Krieg & Waldrop, P.C., 93 F. Supp. 3d 835, 854 (M.D. Tenn. 2015). Under the doctrine, "the general Tennessee rule [only] holds attorneys liable for losses to client for failure to exercise reasonable skill and care." Id.; see also Woodruff v. Tomlin, 616 F.2d 924, 930 n.1 (6th Cir. 1980) ("[N]either counsel nor we have found an American decision holding an attorney liable for the choice of trial tactics or the good faith exercise of professional judgment."). Absent such a rule, "every losing litigant would be able to sue his attorney if he could find another attorney who was willing to second guess the decisions of the first attorney with the advantage of hindsight." Woodruff, 616 F.2d at 930.

RLF acknowledges that attorneys are not liable for reasonable strategy decisions, but argues that judgmental "immunity does not shield neglect, abdication of duty, or disloyalty." (ECF No. 20 at PageID 278 (citing Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383 (Tenn. 2002)).)[7] Although Woodruff counsels that an honest exercise of professional judgment does not absolve counsel's duty "to exercise a reasonable degree of skill and care in all his professional undertakings," 616 F.2d at 930, to the extent RLF alleges neglect, abdication of duty, or disloyalty in its claim for legal malpractice, those claims are nevertheless implausible.

---

[7] In the Sanctions Order, the Court explained that Givens was unrelated to judgmental immunity, and instead stood for the proposition "that an insurer and an insured may be held vicariously liable for the tortious acts or omissions of an attorney hired to defend the insured, if the attorney's tortious actions were directed, commanded, or knowingly authorized by the insurer or by the insured." (ECF No. 37 at PageID 469 (quoting Givens, 75 S.W.3d at 393).)

For instance, RLF alleges that Defendants failed to call witnesses in Mosby, specifically Mosby's ex-husband, who has "firsthand knowledge of her diagnosed narcissistic personality disorder." (ECF No. 1 at PageID 7.)  But, as Defendants point out, they "did not even know Ms. Mosby's ex-husband could be a potential witness as he was not identified as a person with knowledge by Plaintiff or Ms. Mosby." (ECF No. 17 at PageID 178.)  Then, when the ex-husband showed up at trial, apparently wielding Mosby's psychiatric records, Mosby's counsel sought to add him to the witness list, in the hopes that Judge Mays could invoke Federal Rule of Evidence 615 and prohibit him from being in the courtroom.  (See ECF No. 9-9 at PageID 115.) Judge Mays denied the request as "too late" because he had already "entered the pretrial order." (Id.)  RLF's allegation that it was malpractice when Defendants' failed to call Mosby's ex-husband as a witness, or that they should have somehow introduced into evidence the psychiatric records he brought with him to court, is not supported by the record.

Moreover, to the extent that RLF asserts that Mosby should have been cross-examined about her alleged narcissistic personality disorder that RLF acknowledges surfaced only during the trial, Defendants accurately point out that, "whether to cross a live witness before a jury on an alleged medical diagnoses with no witness or document to prove up a (questionable) attempt at impeachment—there can be no better example of an exercise of professional judgment and strategy.  Even if a plausible claim could arise from these facts (one cannot) it would be barred by the judgmental immunity doctrine." (ECF No. 24 at PageID 324.)  The Court notes that, in the exercise of professional judgment, it would make sense that RLF's counsel would guard against a jury's conclusion that it was treating Mosby unfairly at trial.

To the extent that Plaintiff alleges that Defendants failed to introduce at the trial the affidavits RLF attached to its supplemental response, or that it omitted key facts to the position

14

statement submitted to the Equal Employment Opportunity Commission ("EEOC"), such decisions cannot be characterized as anything other than the exercise of professional judgment. As Defendants point out, they "properly did not introduce affidavits obtained by Plaintiff as inadmissible hearsay . . . or any other ambush type tactic desired by Plaintiff." (ECF No. 17 at PageID 178.)[8] And, to the extent counsel made the strategic decision not to initially volunteer certain information to the EEOC, RLF—through Reaves—signed off on that approach. (ECF No. 24 at PageID 322 (citing ECF No. 24-6 at PageID 381).) For RLF to claim that acts that its lawyer-CEO signed off on could now be the basis for a malpractice claim is implausible.

The record similarly undermines RLF's malpractice-related allegation that Defendants "presented a redacted exhibit that distorted Mosby's behavior." (ECF No. 1 at PageID 3.) As noted above, the exhibit was redacted at Judge Mays's direction.

RLF also asserts that it was malpractice for Defendants to fail to lodge objections during the Mosby trial, specifically when "defense counsel allowed Plaintiff's CEO to be referred to in open court as 'the dumbest lawyer in America' by opposing counsel—without objection or motion to strike," as "[t]his unchallenged slur visibly prejudiced the jury and damaged Plaintiff's professional reputation on the record." (Id. at PageID 3.) However, it was Reaves, the CEO in question, who used the phrase—twice—while testifying on cross-examination in Mosby. He testified that "an attorney who would illegally fire a labor law employment attorney who has 25 years of litigating for an illegal reason, I think that would be the dumbest lawyer in America. I

---

[8] As noted above, because the affidavits were attached to RLF's supplemental response to the Motion for Judgment on the Pleadings, the Court is not considering them. Nevertheless, while those affidavits appear to outline perceptions that RLF's employees had of Mosby, they do not speak to whether "Mosby was treated the same as other executives" at the firm, as RLF implies. (ECF No. 23 at PageID 296.)

think that would be the dumbest lawyer in America." (ECF No. 9-6 at PageID 105.) RLF's

failure to object to Reaves's own testimony cannot be a plausible basis for a malpractice claim.[9]

RLF's malpractice allegation based on Baker Donelson's failure to allege a counterclaim

appears to be that "Defendants falsely represented that Mosby's defamatory email was not

actionable," and that Plaintiff "relied on that representation by foregoing viable counterclaims[.]"

(ECF No. 20 at PageID 279.) Defendants assert that they "correctly informed Plaintiff no valid

factual and legal basis existed to pursue such a defamation counterclaim, because the Mosby

email was not published to any third party," and that it was "undisputed that any email by Ms.

Mosby was an internal email, with no third-party recipients or publication of any kind." (ECF

No. 17 at PageID 178; id., n. 5.)[10] Defendants also assert that RLF "has never identified any

actionable, defamatory statements made by Ms. Mosby as to Plaintiff." (ECF No. 24 at PageID

321.)

Ultimately, a cursory evaluation of the elements of a defamation claim under Tennessee

---

[9] The only time that opposing counsel appears to have made any such reference came in closing arguments, when Mosby's attorney asserted that Reaves "is *not* the dumbest lawyer in America. I will give him that." (ECF No. 9-7 at PageID 108) (emphasis added).

[10] Defendants attached to their answer the emails through which they informed Plaintiff of the lack of any basis for filing a counterclaim. (See ECF Nos. 9-2, 9-3.) "Defendants request this Court consider these emails because they are part of the conversation referenced in the Complaint and have not been accurately portrayed; therefore, they are necessary to correct the factual record." (ECF No. 17 at PageID 178 n.6.) Because the contents of the communications, if not the emails themselves, are referred to in the complaint, the Court can consider them in the context of a motion for judgment on the pleadings. See Hodges v. City of Grand Rapids, 139 F.4th 495, 510 (6th Cir. 2025) (courts "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein"); see also Gavitt v. Born, 835 F.3d 623, 639–40 (6th Cir. 2016) (applying the same standard to motions under 12(b)(6) and 12(c)).)

16

law demonstrates that Defendants' refusal to assert such a counterclaim on RLF's behalf falls squarely within judgmental immunity protections. Making out a prima facie case of defamation in Tennessee requires a plaintiff to show that "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Sullivan v. Baptist Mem'l Hosp., 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts § 580B (1977)).

"'Publication' is a term of art meaning the communication of defamatory matter to a third person" under Tennessee law. Id. (citing Quality Auto Parts Co. v. Bluff City Buick Co., 876 S.W.2d 818, 821 (Tenn. 1994)). At the same time, "Tennessee has adopted the rule that 'where communication is made to a servant or business associate in the ordinary and natural course of business, there is no actionable libel.'" Koch v. Loc. 438, United Autoworkers Union, 54 F. App'x 807, 812 (6th Cir. 2002) (quoting Freeman v. Dayton Scale Co., 19 S.W.2d 255, 257 (1929)); see also Sullivan, 995 S.W.2d at 572 (noting that "communication among agents of the same corporation . . . are not to be considered as statements communicated or publicized to third persons").

RLF disputes that Mosby's email constituted an internal communication, as it came from her personal email the day after she was terminated. The record does not make it clear when Mosby's email was sent. The complaint alleges it came on May 28, 2022, a week before Mosby's termination. (ECF No. 1 at PageID 2.) But the copy of the email that was included in a filing in Mosby appears to be dated June 3, 2022, in response to an email from RLF from the previous day, which indicated that Mosby was terminated "effective immediately." (Mosby, ECF No. 47-1 at PageID 514–24.) In any event, although there is no dispute that Mosby's email

17

was sent only to people within RLF, based on the fact that it appears to have been sent after she had been terminated, it is not clear that the message would fall under the intra-corporate publication exception, as Defendants contend.

But even if it were not an internal communication covered by the exception, RLF has failed to allege that the email was defamatory, and thus could have formed the basis for the filing of a counterclaim against Mosby. RLF characterized the email as being "filled with profanities, racially charged accusations, and inflammatory attacks," but RLF does not identify what, if any of the statements in the email were false or defamatory, or that they were made with a reckless disregard for the truth, or by failing to ascertain the truth of the statement.

Furthermore, in their communications with Reaves regarding a potential defamation counterclaim, Defendants laid out multiple reasons beyond a lack of publication as to why there was not a factual or legal basis for making such a claim, which is a quintessential exercise of professional judgment. For example, they explained that Mosby's email "appear[ed] to be personal insults directed at [Reaves], not RLF," and that "insults normally do not meet the criteria for a defamation claim." (ECF No. 9-3 at PageID 72.) Accordingly, Defendants' failure to file a counterclaim against Mosby for defamation cannot form the basis for a claim for malpractice.[11]

---

[11] Defendants also assert that the statute of limitations on any malpractice claim related to their failure to assert a defamation counterclaim on RLF's behalf had expired prior to the filing of this lawsuit. A one-year statute of limitations applies to legal malpractice claims in Tennessee. See Tenn. Code. Ann. § 28-3-104(c)(1) ("Actions and suits against licensed public accountants, certified public accountants, or attorneys for malpractice shall be commenced within one (1) year after the cause of action accrued, whether the action or suit is grounded or based in contract or tort."). Defendants communicated their position regarding the lack of a basis for a defamation counterclaim in October and November 2023, the last time on November 13. (See ECF Nos. 9-2, 9-3.) RLF filed this lawsuit on June 18, 2025, more than six months after the statute of limitations ran on any claim for malpractice that could have been based on the failure to file a defamation counterclaim, rendering it untimely. RLF does not contend, and the law does not

As the foregoing illustrates, RLF has failed to plausibly allege that Defendants breached the duty they owed to it, which alone warrants dismissal of its malpractice claim. Yet, even if RLF had sufficiently alleged that Defendants breached any such duty, RLF still would have failed to plausibly plead its prima facie case for malpractice, as the breach could not have been said to have been the but-for cause of RLF's damages when the Mosby record is considered, as illustrated by Reaves's actions at trial. During his testimony, Reaves testified on cross-examination that "[i]t is illegal to retaliate. And if the jury feels that I retaliated, I want them to give every single dime that you ask them to give. If they think that I fired [Mosby] because of that, I want the jury to give you $10 million." (ECF No. 9-8 at PageID 111–12.) Defendants argue that, by inviting the verdict against it, "Plaintiff waived, should be estopped and is barred from alleging Defendants' acts and omissions represent but for cause and proximate cause." (ECF No. 17 at PageID 183.)

Ultimately, RLF failed to plausibly allege that Defendants breached their duty, but, given the Mosby record, and particularly the position Reaves staked out during the trial, it has also failed to plausibly allege that any of the actions that it cites as being malpractice could have been the cause-in-fact of its alleged injuries, specifically the judgment entered against it in Mosby.

---

support, that the limitations period should have been tolled. See Story v. Bunstine, 538 S.W.3d 455, 469 (Tenn. 2017) (declining to adopt the continuous representation rule to toll the running of the statute of limitations in legal malpractice cases and instead concluding that "a litigant who learns that it has suffered a cognizable legal injury and that this injury was caused by the negligence of its lawyer but who nevertheless continues to be represented by that lawyer will be forever barred from bringing suit against the lawyer unless it files suit within one year after the discovery of the injury and its cause") (quoting Cherry v. Williams, 36 S.W.3d 78, 87 (Tenn. Ct. App. 2000)).

Because RLF has failed to include sufficient facts to make the claims for legal malpractice facially plausible, Defendants' motion for judgment on the pleadings is **GRANTED** as to that cause of action.

### ii. Plaintiff's Claim for Breach of Fiduciary Duty

To recover for breach of fiduciary duty under Tennessee law, "a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." Atchison v. Hubbell Indus. Controls, Inc., 777 F. Supp. 3d 834, 852 (M.D. Tenn. 2025) (citing In re Estate of Potter, 2017 WL 4546788, at *2 (Tenn. Ct. App. Oct. 11, 2017)). "Tennessee law recognizes two types of fiduciary relationships: relationships that are fiduciary per se (e.g., attorney/client, guardian/ward) and relationships that are 'confidential' due to one party's ability to exercise 'dominion and control' over another party." Id. (quoting Henrick v. Mealor, 2020 WL 1676913, at *3 (M.D. Tenn. Apr. 6, 2020)).

RLF alleges that Defendants breached their fiduciary duty to it when they "subordinated Plaintiff's interests to their own, protecting their reputations, preserving relationships with opposing counsel, and avoiding the appearance of aggressiveness at Plaintiff's expense." (ECF No. 1 at PageID 5.)

Defendants do not dispute that a fiduciary relationship existed with RLF, but instead assert that, "as with Plaintiff's legal malpractice claim, it is evident no breach of the fiduciary duty occurred. Plaintiff provides no plausible factual basis Defendants breached any duty and the breach was the proximate cause of any damage. At best, this claim is premised entirely on litigation strategy decisions, including what evidence was presented, which witnesses were called, and what arguments were made." (ECF No. 17 at PageID 184.)

20

It is not entirely clear what allegations RLF advances in its complaint that would support a claim for breach of fiduciary duty. It does not help that, as the Court pointed out in its Sanctions Order, RLF's initial response to Defendants' Motion supported its argument with a citation to Seaton v. Lawson Chevrolet-Mazda, Inc., 821 S.W.2d 137, 140 (Tenn. 1991), which "has nothing to do with fiduciary duties or the facts of this case." (ECF No. 37 at PageID 467.)

Apart from its misplaced reliance on Seaton, RLF counters Defendants' arguments by asserting that "Defendants subordinated its interests to their collegiality with opposing counsel and their own reputations," which "state[s] a plausible breach of fiduciary duty distinct from malpractice." (ECF No. 20 at PageID 279.) But the allegation that RLF's counsel was collegial with opposing counsel during the Mosby trial cannot plausibly state a claim for breach of fiduciary duty. Collegiality with opposing counsel is encouraged in the legal profession, and specifically promoted by this Court's Attorney Conduct Guidelines, found in Appendix C to the Court's Local Rules.

The duties found in those guidelines, which were adopted "to promote and foster the ideals of professional courtesy, conduct and cooperation," include the following:

- "A lawyer should treat the opponent, the opposing party, the court, and court staff with courtesy and civility, conducting business in a professional manner at all times";

- "While clients in adversary proceedings may harbor ill feelings toward one another, such feelings should not influence a lawyer's conduct, attitude, or demeanor toward opposing counsel";

- "A lawyer should make every reasonable effort to cooperate with opposing counsel"; and

- "A lawyer should maintain a cordial and respectful relationship with opposing

21

counsel."

See, generally, LR, App'x C.

The cordial interactions described in the complaint between Plaintiff's counsel and RLF's counsel are precisely the sort of professional exchanges that are encouraged by the Court's Attorney Conduct Guidelines, and that the bar could use more, not less, of.  Accordingly, RLF's displeasure with the exchanges between Defendants and opposing counsel during the trial cannot form the basis for a claim of breach of fiduciary duty.  The Motion for Judgment on the Pleadings as to that claim is **GRANTED**.

### iii.   Plaintiff's Civil Conspiracy Claim

Under Tennessee law, "the elements of a civil conspiracy claim are: '(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury.'"  Nippert v. Jackson, 860 F. Supp. 2d 554, 566 (M.D. Tenn. 2012) (quoting Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006)).  "[A] civil conspiracy claim requires 'the existence of an underlying tort or wrongful act committed by one or more of the conspirators in furtherance of the conspiracy.'"  Id. (quoting Stanfill v. Hardney, No. M2004–02768–COA–R3–CV, 2007 WL 2827498, at *7 (Tenn. Ct. App. Sep. 27, 2007)).  Courts in the Sixth Circuit, as well as Tennessee, have determined that civil conspiracy claims must be pled with particularity.  See, e.g., Hagen v. U-Haul Co. of Tenn., 613 F. Supp. 2d 986, 997 (W.D. Tenn. 2009) (finding "that a heightened level of specificity should be required for the Plaintiffs to plead their conspiracy claim"); Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006) (finding that "[c]onspiracy claims must be pled with some degree of

22

specificity," and "[c]onclusory allegations . . . unsupported by material facts will not be sufficient to state such a claim").

Defendants assert that RLF fails to plausibly allege the existence of a civil conspiracy, as it "does not allege who the co-conspirators are, what the conspiracy agreement is, what is tortiously criminal, or what the conspiracy goal is." (ECF No. 17 at PageID 184.)  As the basis for its civil conspiracy claim, RLF asserts that, "[u]pon information and belief, Defendants engaged in communications with opposing counsel and/or third parties that undermined Plaintiff's case," and that "[t]heir coordinated inaction and decisions appear calculated to engineer a loss or minimize risk to themselves rather than serve their client." (ECF No. 1 at PageID 5.)  According to RLF, "Defendants coordinated with one another and with opposing counsel to suppress evidence, omit counterclaims, and present a distorted case.  These allegations, taken as true, suffice at the pleadings stage." (ECF No. 20 at PageID 279.)

RLF fails to plausibly allege a civil conspiracy, even under a non-heightened pleading standard.  Based on RLF's complaint, it is unclear who the members of the conspiracy were, how members of the same law firm could be part of any such conspiracy,[12] what the tort or wrongful act underlying the conspiracy was, what the overt acts were, or how the conspirators "engineer[ed] a loss or minimize[d] risk" through that conspiracy.[13]

---

[12] Generally speaking, under the intra-corporate conspiracy doctrine, "where all of the defendants are members of the same collective entity, there are not two separate people to form a conspiracy." Amadasu v. The Christ Hosp., 514 F.3d 504, 507 (6th Cir. 2008) (citing Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 510 (6th Cir. 1991) (quotations omitted).

[13] In its supplement response, RLF raises for the first time the fact that Defendant Murrell, "previously represented Mosby in a separate matter, creating a conflict under Tenn. R. Prof. Conduct 1.9.  His undisclosed conflict undermines loyalty, calls into question trial strategy decisions, and supports claims of conspiracy and malpractice." (ECF No. 20 at PageID 278.)

23

The only communication Plaintiff references that might be the basis of a civil conspiracy claim is the statement uttered by Mosby's counsel that "[w]e've made a lot of money together and we'll make a lot more," which was directed at Defendant Shauger, and which Defendant Hancock was alleged to have heard.  (ECF No. 1 at PageID 4.)  But assuming that the statement was made, given Plaintiff's failure to sufficiently allege a claim for legal malpractice, there is not the presence of a tort or unlawful act undergirding the statement.  Moreover, it was not made by any Defendant, it does not outline a common design between any Defendant and any other entity, it does not identify an overt act in furtherance of the conspiracy, and, although the Court can presume that Plaintiff aims to allege that the resulting injury from the conspiracy was the jury verdict against it in Mosby, that is not alleged in the complaint, and it is not clear how that harm could flow from the alleged civil conspiracy in the first place.  To the extent Plaintiff attempts to allege that counsel's collegiality could be evidence of a conspiracy, that claim is also not plausible, for the reasons outlined above.

---

Even if the Court could consider this late-provided fact, it would not change the analysis. Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing."  Defendants assert that Murrell "represented Ms. Mosby, pro bono, in a wholly unrelated matter while he was employed at a prior firm, not Baker Donelson, in 2020," and that representation "predated Ms. Mosby's short employment with the Reaves Law Firm in 2022."  (ECF No. 24 at PageID 324.)  Defendants also assert that RLF and Mosby's counsel were aware of that unrelated representation, and correctly assert that, even if there was a conflict, it was Mosby's conflict to raise, and, in any event, RLF waived any such argument because it did not raise it at the earliest possible time.  (Id. at PageID 324–25 (citing Lazy Seven Coal Sales, Inc. v. Stone & Hinds, P.C., 813 S.W.2d 400, 410 (Tenn. 1991)).)  Murrell's previous representation of Mosby in the unrelated matter cannot for the basis for a claim for conspiracy or any other claim in Plaintiff's complaint.

At bottom, Plaintiff has not plausibly alleged a claim for civil conspiracy, but instead has alleged a barebones conspiracy theory, which cannot form the basis for relief.  Defendants' Motion for Judgment on the Pleadings as to this count is also **GRANTED**.

iv.   Plaintiff's Negligent Misrepresentation Claim

Pleading a claim for negligent misrepresentation under Tennessee law "requires the plaintiff to show that: (1) the defendant supplied false information to the plaintiff; (2) the defendant did not exercise reasonable care in obtaining or communicating this information; and (3) the plaintiff justifiably relied on the information."  Dawit v. Meharry Med. Coll., 721 F. Supp. 3d 647, 671 (M.D. Tenn. 2024) (citing Thompson v. Bank of Am., N.A., 773 F.3d 741, 751–52 (6th Cir. 2014)).

In its complaint, RLF asserts that "Defendants made material misrepresentations regarding the viability of counterclaims, the strength of Plaintiff's defense, and the risks associated with trial" and that RLF "relied on these representations in continuing with trial strategy that severely harmed Plaintiff's position."  (ECF No. 1 at PageID 6.)  Ultimately, RLF asserts that those misrepresentations caused its losses.  (Id.)

Defendants assert that RLF fails to plead a claim for negligent misrepresentation, as it "fails to identify any false statement of material past or present fact made by any Defendant. Plaintiff does not allege Defendants provided any specific, incorrect advice, not merely an opinion, let alone a false material statement of fact."  (ECF No. 17 at PageID 187.)  RLF contends that Defendants "falsely represented that Mosby's defamatory email was not actionable," which is a "statement of present fact, not future opinion."  (ECF No. 20 at PageID 279.)

25

RLF does not detail what misrepresentations Defendants were alleged to have made regarding the strength of Mosby's defense, and the risks associated with trial.  And, as outlined above, Defendants' advice to RLF about the lack of viability of a counterclaim based on Mosby's email had several legal bases, including that the material may have been considered to not have been published, and that the email "appear[ed] to be personal insults directed at [Reaves], not RLF," and that "insults normally do not meet the criteria for a defamation claim." (ECF No. 9-3 at PageID 72.)  For the same reasons outlined above, that advice constitutes the exercise of professional judgment, and cannot be characterized as negligent misrepresentation.

But even if any of that advice could be construed as the Defendants supplying false information to RLF, the negligent misrepresentation claim would nevertheless fail because RLF has failed to demonstrate that his reliance on the representations was reasonable.  Determining whether such reliance is reasonable requires the consideration of several factors, including "the plaintiff's business expertise and sophistication," "the availability of the relevant information," and "the opportunity to discover fraud."  Riddle v. Lowe's Home Ctrs., Inc., 802 F. Supp. 2d 900, 908 (M.D. Tenn. 2011).  "[A] party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach." Id. (quoting Solomon v. First Am. Nat'l Bank, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989)).

Here, as Defendants point out, RLF "does not allege it was in an inferior or unsophisticated position compared to Defendants, nor do any facts suggest it was justified in blindly relying on Defendants' alleged actions or omissions." (ECF No. 17 at PageID 188.)  On the contrary, RLF "is a law firm with full access to the facts and issues of its own case and possessed the legal skills necessary to investigate any alleged incorrect opinion and file its own

26

counterclaim." (Id.) The fact that it did not, when the means of knowledge were readily within its reach, reveals that any reliance was not reasonable.

Consistent with the foregoing, Defendants' Motion for Judgment on the Pleadings as to RLF's negligent misrepresentation claim is **GRANTED**.

> v.   Plaintiff's § 1981 Claim

Under 42 U.S.C. § 1981, "intentional race discrimination in the making and enforcing of contracts involving both public and private actors" is prohibited. Amini v. Oberlin Coll., 440 F.3d 350, 358 (6th Cir. 2006) (citing Christian v. Wal–Mart Stores, Inc., 252 F.3d 862, 867–68 (6th Cir. 2001)). At the pleading stage in the § 1981 context, a plaintiff must allege "sufficient facts to show that (1) the plaintiff belonged to a protected class; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in § 1981(a)." Inner City Contracting, LLC v. Charter Twp. of Northville, 87 F.4th 743, 755 (6th Cir. 2023) (citing Amini, 440 F.3d at 358). To prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 341 (2020).

Defendants do not contest that RLF belonged to a protected class, or that it has alleged that its right to enter contracts is enumerated in § 1981(a). Instead, they assert that they are entitled to judgment under Rule 12(c) because none of Plaintiff's "conclusory allegations evidence Defendants' intent to discriminate against Plaintiff based on race." (ECF No. 17 at PageID 189.)

Plaintiff's § 1981 claim reiterates many of the facts that it propounds to support its other claims, and asserts that, "[u]pon information and belief, Defendants' repeated refusals to assert

27

valid defenses, admit critical evidence, and defend Plaintiff's reputation in open court were motivated, at least in part, by racial bias or internalized perceptions that a Black-owned law firm was less deserving of zealous advocacy." (ECF No. 1 at PageID 7.) However, as explained above, many of those grounds are belied by the record.

But even if they did form the basis of claims that were otherwise not dismissible under Rule 12(c), RLF's § 1981 claim still would not survive Defendants' Motion. The second prong of a § 1981 claim regarding intentional discrimination, "can be shown through either direct evidence of discrimination or circumstantial evidence 'which would support an inference of discrimination.'" Johnson v. Univ. of Cincinnati, 215 F.3d 561, 572 (6th Cir. 2000). However, there is nothing from the allegations in RLF's complaint that provides direct or circumstantial evidence of discrimination.

According to RLF, Defendants "individually and collectively, treated Plaintiff differently than similarly situated white clients." (ECF No. 1 at PageID 7.) But this vague and conclusory allegation, with nothing more, does not sufficiently plead that Defendants intended to discriminate against RLF on the basis of race. See Shakespeare v. MetLife Legal Plans, Inc., No. 2:25-cv-02250-TLP-atc, 2025 WL 1341897, at *5 (W.D. Tenn. Apr. 30, 2025), report and recommendation adopted, 2025 WL 2051113 (W.D. Tenn. July 22, 2025) ("general and conclusory allegations that white . . . customers are treated differently than [the plaintiff] was treated are inadequate, without additional factual support, to plead a claim for racial discrimination" (quoting Moore v. WesBanco Bank, Inc., No. 12-3697, 2013 WL 12623011, at *3 (6th Cir. Mar. 6, 2013))).

RLF appears to be seeking to draw the inference from Defendants' allegedly substandard representation of it that they would have done a better job had RLF been a white-owned firm.

28

No allegations from the complaint support that inference or conclusion.  In short, although RLF has sufficiently alleged the "the statutory bases for [its] claim," it has failed to "set forth the factual predicate of [its] claim" that is required "to move a § 1981 claim past the pleading stage." Williams v. Richland Cnty. Child. Servs., 489 F. App'x 848, 852 (6th Cir. 2012) (quoting Lindsay v. Yates, 498 F.3d 434, 440 (6th Cir. 2007) (citation modified).

If the conclusory allegations offered by RLF were enough to sufficiently support a § 1981 claim at the pleading stage, any law firm that represents a minority business and loses at trial would be subject to a claim of race discrimination under § 1981, which is an untenable result. Because Plaintiff has failed to sufficiently support its claim with any factual allegations that race played a role here, Defendants' Motion for Judgment on the Pleadings as to Plaintiff's § 1981 claim is **GRANTED**.

### III.    Jurisdiction Over Baker Donelson's Counterclaims

Having granted Defendants' Motion as to all of Plaintiff's claims—and denied Plaintiff's Partial Motion to Dismiss—the only causes of action that remain are Baker Donelson's counterclaims for breach of contract and unjust enrichment.  Both of those claims are based on Tennessee state law.  In such circumstances, it is within the Court's discretion to retain jurisdiction over the state-law claims or to dismiss them without prejudice, as courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

"When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." Gamel v. City of Cincinnati, 625 F.3d 949, 952 (6th Cir. 2010) (quoting Musson Theatrical, Inc. v. Fed. Exp. Corp., 89 F.3d 1244, 1254–1255 (6th Cir. 1996)).  "Dismissal is not

mandatory, however, because supplemental jurisdiction 'is a doctrine of discretion, not of plaintiff's right.'" Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 210 (6th Cir. 2004) (abrogated by Royal Canin U. S. A., Inc. v. Wullschleger, 604 U.S. 22 (2025)) (quoting Taylor v. First of Am. Bank–Wayne, 973 F.2d 1284, 1287 (6th Cir. 1992)). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" Id. (quoting Carnegie–Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)).

Although courts typically do not exercise jurisdiction over state-law claims in these circumstances, given the positions of the Parties, and a weighing of the applicable factors, the Court will retain jurisdiction over Baker Donelson's counterclaims.

To begin, at the October 23, 2025 scheduling conference, the Court solicited the Parties' positions on retaining jurisdiction over the case if only state-law claims remained. Both Parties expressed a preference for the case remaining in federal court under such circumstances. RLF's counsel explained that "[m]e personally, I prefer to stay in federal where I know it's going to, you know, move. And as soon as you find out it is not a case or anything like that, you'll dismiss it. You'll get it out of the way, but it's going to move. So I would prefer to stay in federal, but I would not be kicking and screaming and fighting if it got moved—removed to state." (ECF No. 30 at PageID 406–07.) Counsel for Defendants concurred, explaining that "[w]e want to stay in your court, have you rule on the merits." (Id. at PageID 407.)

Although the Parties' positions alone are not enough to warrant the Court exercising its discretion to retain jurisdiction over the remaining claims, the positions speak to the convenience and fairness of the matter continuing in this Court. The fact that this case was filed here based on the Court's federal question jurisdiction, remanding the case is not an option. If the Court

30

were to refuse to exercise jurisdiction over the remaining claims, Baker Donelson would face the inconvenience of having to file the case anew. These facts support this Court retaining jurisdiction over the state-law claims.

Typically, concerns about judicial economy are less prevalent when cases are dismissed at the pleading stage, as such a "dismissal usually comes early in the proceedings, when the court has not yet invested a great deal of time into resolution of the state claims." Musson, 89 F.3d at 1255. But this is not the typical case, at least in part given the entry of the Court's Sanctions Order. Not only has the Court spent more time on this case than most others in a similar procedural posture, but, given the entry of the Sanctions Order, there also are matters for this Court to resolve even outside of Baker Donelson's counterclaim. The Court determined that Baker Donelson was entitled to monetary sanctions as part of the Sanctions Order, and required that both it and RLF submit filings related to those monetary sanctions to determine the appropriate sanctions amount. (ECF No. 37 at PageID 473.)[14] Moreover, the Court ordered that the Sanctions Order be forwarded to the Tennessee Board of Professional Responsibility's Disciplinary Counsel, and that RLF notify the Court within fourteen days of any BPR adjudication related to the referral. (Id.) It is more judicially economical and convenient for all of those issues to be resolved before this Court alongside the substantive legal claims.

The comity factor, "whereby judges decline to exercise jurisdiction over matters more appropriately adjudged elsewhere," also does not counsel against the Court retaining jurisdiction over the state-law claims. See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 817 (1993) (Scalia, J., dissenting). Baker Donelson's claims are straightforward breach of contract and

---

[14] Defendants submitted their filing on June 12, 2026. After RLF missed its June 26, 2026 deadline to file a response, the Court sua sponte extended RLF's deadline by a week. (See ECF No. 39.) RLF's response remains outstanding.

31

unjust enrichment claims, and do not involve novel issues of state law.  In other words, this does not present an instance where the Court would be needlessly deciding—or breaking new ground—on state law claims.  Comity does not counsel against this Court retaining jurisdiction over Baker Donelson's counterclaims.

On the whole, the factors of judicial economy, convenience, fairness, and comity all weigh in favor of this Court retaining jurisdiction over Baker Donelson's state-law counterclaims.  The Court therefore retains jurisdiction over those claims, and this case.

## CONCLUSION

For the reasons outlined above, RLF's Partial Motion to Dismiss is **DENIED**. Defendants' Motion for Judgment on the Pleadings is **GRANTED**.  The Court will retain jurisdiction over Baker Donelson's counterclaims.

**IT IS SO ORDERED,** this 29th day of June, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE

32